Plaintiff Contact Information:
Eric L. Jarrett                          Tel: (248) 224-1874
311 S. 1st St., Unit #507        Email: Eric.L.Jarrett@gmail.com
San Jose, CA 95113

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ERIC L. JARRETT
      Plaintiff,

v.

ESSEX PROPERTY TRUST
      Defendants

FILED

DEC 1 2 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

CV 14.05420
HRL

## VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, ERIC L. JARRETT, in pro per, and for good cause, states as his complaint:

### PARTIES AND JURISDICTION

1. Plaintiff, ERIC L. JARRETT, (Jarrett) was at all times pertinent hereto, a resident of the State of Michigan and a student at the University of Michigan Law School.

2. Defendant, ESSEX PROPERTY TRUST (Essex) is the owner and/or management company of an apartment complex located in the City of San Jose, California.

3. This is an action for injunctive relief and for damages.

4. Plaintiff invokes the equitable jurisdiction of this Honorable Court.

5. This action is brought pursuant to the Fair Credit Reporting Act, 15 USC §1681, et seq, and the Fair Debt Collections Act, 15 USC §1692, et seq.

6. This action is also brought pursuant to the statutory and common law of the State of California, including but not limited to the California Consumer Credit Reporting Act, Cal. Civ. Proc. Code §§1785.1-1785.30, and the California Fair Debt Collections Practices Articles, Cal. Civ. Proc. Code §§1788-1788.30.

7. Plaintiff invokes the supplemental jurisdiction of this Honorable Court.

8. This matter is otherwise properly before this Honorable Court.

1

## STATEMENT OF FACTS

9. During the winter of 2012 through the spring of 2013, Jarrett was a student, attending the University of Michigan Law School. As such he interviewed for and was offered an internship with a law firm located in Palo Alto, California. He accepted the offer. The internship was to last for ten weeks during the summer of 2013, after which Jarrett planned to return to the State of Michigan and to resume his studies at the University of Michigan. Accordingly, Plaintiff had to make temporary living arrangements at a location within a reasonable commuting distance of the law firm's offices.

10. Jarrett contacted Essex and, explained the circumstances surrounding his need for temporary living arrangements. He inquired into whether the company was willing to rent an apartment on a short term basis.

11. Jarrett was advised that short term leases were available, and that he would be contacted by a leasing agent.

12. Thereafter, Jarrett was contacted by an Essex leasing agent. Over the course of the ensuing weeks, Jarrett communicated with the leasing agent on several occasions by telephone and via email. The conversations/communications covered a number of topics, however, most of the communications focused upon the length of a short term lease and the rental rate.

13. With respect to the duration of a lease, Jarrett explained that he would be in California only for a ten week long internship, after which he would be returning to Michigan in time for the fall 2013 semester. Consequently, he only needed a lease which would correspond to the short duration of his internship. The leasing agent stated that a short term lease which accommodated his needs would be available.

14. The leasing agent eventually communicated that a three month lease was available, to which Jarrett further inquired into the availability of a ten week lease. To this inquiry, the leasing agent offered conflicting responses. Notwithstanding apparently contradictory responses to that specific inquiry, Plaintiff decided that he wanted to rent an apartment with Essex and stated his decision to the leasing agent. Jarrett made abundantly clear, and the leasing agent confirmed his understanding, that he would be returning to Michigan a few days after the end of his internship. Jarrett was only unsure of the exact day that he would need to leave the apartment. The leasing agent indicated that Jarrett could simply sign the lease and if he needed to add a few extra days onto the end of the lease that he would only have to communicate this need to the leasing office within the final weeks of his lease. With his concern about the lease end-date satisfied by the leasing agent's response, Jarrett submitted his application.

15. Jarrett then completed an application for an apartment lease and paid the application fee associated therewith. He also notified the leasing agent that he was very busy at school as he was studying for final exams, and that his availability during that period would be extremely limited.

16. After submitting the application but before signing the lease, and while studying for a final exam in the school library, Jarrett was contacted by the leasing agent. The agent advised Jarrett that if he did not sign the lease by the close of business that day, that he would not be able to rent an apartment at the rate previously discussed, but would rather have to pay a substantially increased rental rate. The agent then stated that he would send the lease electronically and that Plaintiff would need to sign the lease electronically and return it immediately.

17. Concerned that he might lose the favorable rental rate, Plaintiff then, as instructed, interrupted his studies in order to quickly sign and return the lease.

3

18. Plaintiff quickly reviewed the lease, noting its most important provisions such as the rental rate and the duration of the lease. However, under the circumstances he was not able to review it with the same degree of focus and thoroughness as he otherwise would have. Moreover, the electronic format did not allow for him to make changes. After quickly reading through the document, Plaintiff reached the final signature page and signed the document and returned it electronically. There was no language with respect to automatic renewal or extension provisions at the site of the signature block.

19. Jarrett paid a security deposit and his first month's rent. Upon arrival, Jarrett met the agents in the leasing office. As he received his keys, he again indicated that he would be leaving in early August to return to school. Thereafter, he timely paid his rent each month and resided in the apartment without causing any damage thereto.

20. During the last week of July, the leasing office emailed Plaintiff with what they called a courtesy inquiry to see if Plaintiff wished to stay another month at Essex. Plaintiff responded by stating that he would be returning to Michigan, as planned and previously communicated. At that time, he also, in accordance with the first leasing agent's instructions, requested to stay a few extra days to pack up his belongings and vacate the premises. His request was granted.

21. Plaintiff completed his internship, vacated the apartment and returned to Michigan in time for his fall semester as planned and as communicated on numerous occasions to Essex. Essex leased the apartment to a new tenant within approximately one week of Jarrett's departure.

22. Prior to the conclusion of his internship, the law firm offered Plaintiff permanent employment, to begin in the fall of 2014, conditioned upon Plaintiff being admitted to the California Bar.

4

23. After returning to Michigan, Essex began sending demands for payment of an amount in excess of $2,000 purportedly for rent beyond the expiration of Jarrett's lease and his surrender of the premises. Essex contended that this amount was due and owing because Jarrett purportedly had failed to provided notice of his intent not to renew or extend his lease.

24. Jarrett, both personally and through an attorney, denied owing any additional rent to the defendant, and demonstrated through the previous exchange of email, that he had unambiguously stated his intent to vacate the premises and return to school in Michigan upon the conclusion of his 10 week internship/expiration of his lease. Notwithstanding these facts, Essex persisted in demanding the amount it claimed was due and owing.

25. In February, 2014, Plaintiff sat for the California Bar Examination, thereby beginning to fulfill of the requirements for the commencement of his employment. By this time, defendant Essex had modified the amount which it claimed was due and owing, but nevertheless continued to demand payment.

26. In anticipation of his application for admission to the California Bar, Jarrett, through his attorney again contacted defendant in an effort to persuade the defendant to discontinue its claim for any amount due and owing. Jarrett stated that the unjustified Essex claim could impede his application for admission to the bar. Jarrett also expressed his sincere concern with the significant damage to his credit score that Essex's unfounded demands could cause.

27. Rather than to discontinue its claim, Essex engaged the services of a collection agency, and immediately thereafter in April, 2014, defendant began reporting the amount it claimed to be due to credit reporting services as an unpaid debt. Said reporting was knowingly made without any truth or justification, and with Essex having been placed on notice of the potential adverse

impact that reporting the disputed amount as a bad debt could have on Jarrett's application to the bar.

28. Jarrett's credit record has been wrongfully disparaged and defamed by Essex, thereby impairing his ability to obtain credit and otherwise negatively reflecting upon his character.

29. Jarrett's application for admission to the California Bar is now before the committee which examines his morals, character and fitness. On information and belief, he states that his credit record is a factor which that committee will take into account before making its recommendation.

30. Jarrett enjoyed an excellent credit score prior to the disparaging defamatory and false reports to credit reporting agencies by Essex. However, his score has been lowered significantly since Essex began its negative reporting.

31. Since Essex began its false, negative reporting of an unpaid debt by Jarrett and the associated lowering of Jarrett's score, Jarrett has applied for and been denied credit. On information and belief he states his application for credit would have been approved, but for the Essex report. Moreover, Jarrett has experienced a significant amount of distress and anxiety as Essex continued to pursue its demands on a monthly, weekly and even daily basis via mail, telephone and text messaging for over a year. Along the same lines, Jarrett experienced great distress and anxiety as he has been forced to constantly worry about the impact of a severely damaged credit score at a time in his life where most people his age begin to consider purchasing a home.

32. Essex's conduct was knowingly, willfully, and maliciously undertaken solely to intimidate Jarrett into making payment of the claimed amount, notwithstanding the fact that he owed nothing to the defendant.

6

33. Essex has failed, neglected and refused to return Jarrett's security deposit.

34. Jarrett will suffer irreparable injury unless this Honorable Court issues an injunction requiring Essex to correct negative entries to his credit record.

## FIRST CAUSE OF ACTION

35. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

36. Plaintiff will suffer irreparable harm unless the false negative credit entries by Essex are purged from his credit record and his tainted credit score is corrected. Therefore, Plaintiff seeks an injunction requiring Essex to cease making disparaging credit references and to take those steps necessary to restore Plaintiff's credit score.

## SECOND CAUSE OF ACTION

37. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

38. Defendant's conduct is actionable pursuant to 15 USC §1681, et seq.

## THIRD CAUSE OF ACTION

39. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

40. Defendant's conduct is actionable pursuant to 15 USC §1692.

## FOURTH CAUSE OF ACTION

41. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

42. Defendant's conduct is actionable pursuant to Cal. Civ. Proc. Code §§ 1785.1 – 1785.30.

## FIFTH CAUSE OF ACTION

43. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

44. Defendant's conduct is actionable pursuant Cal. Civ. Proc. Code §§ 1788 – 1788.30.

## SIXTH CAUSE OF ACTION

45. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

46. Defendant, through its acts or omissions published and/or circulated false statements relative to the Plaintiff thereby defaming him.

## SEVENTH CAUSE OF ACTION

47. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

48. Defendant, through its acts or omissions invaded Plaintiff's privacy causing substantial injury, including but not limited to anxiety and mental distress.

## EIGHTH CAUSE OF ACTION

49. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

50. Defendant intentionally inflicted emotional distress upon the Plaintiff.

## NINTH CAUSE OF ACTION

51. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

52. Defendant, through its acts and omissions has breached its expressed and/or implied contract with the Plaintiff.

## TENTH CAUSE OF ACTION

53. Paragraphs 1-35 are realleged and incorporated by reference as if fully set forth herein.

54. Defendant has unlawfully failed, neglected and refused to return Plaintiff's security deposit.

WHEREFORE Plaintiff prays for injunctive relief and judgment in his favor including:

      A. Injunctive relief

      B. Damages

      C. Punitive and /or exemplary damages

      D. Cost of this suit

E. Interest as provided by law

F. Attorney Fees

Eric L. Jarrett
Address 24675, Santa Barbara
City Southfield State MI   Zip 48075
Phone (248) 224-7874

## VERIFICATION

Eric L. Jarrett, being first duly sworn, deposes and says that he has read the foregoing and that all matters of fact alleged herein are true to the best of his knowledge and belief.

Eric L. Jarrett

STATE OF California   )
                                     ) SS.
COUNTY OF Santa Clara )
Subscribed and sworn to before me
this 09th day of December 2014.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: 02-02-2017

VIKAL PATEL
COMM. #2003259
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Feb. 2, 2017

## JURY DEMAND

Plaintiffs hereby demand a jury.

Eric L. Jarrett